# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ISIDORO L. SENA,**

  **Plaintiff,**

vs.                   Civ. No. 99-1329 LH/RLP

**KENNETH S. APFEL, Commissioner,**
**Social Security Administration,**

  **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1. Plaintiff, Isidro L. Sena, (Plaintiff herein) filed an application for Disability Income Benefits (DIB) under title II of the Social Security Act on January 30, 1996, alleging that he had been disabled since January 12, 1996. His application was denied at the first and second levels of administrative review (Tr. 34-41, 44-46), and by an Administrative Law Judge (ALJ herein). (Tr. 13-18). The Appeals Council declined to review the ALJ's decision. (Tr. 3-4). Plaintiff's Complaint in this Court contests the decision of the Commissioner of Social Security denying his claim. The matter is now before the Court on Plaintiff's Motion to Reverse and Remand for rehearing. Plaintiff argues that:

  A. Substantial evidence does not support the ALJ's determination that he retains the residual functional capacity for medium work;

  B. The ALJ failed to apply the correct legal standard when he ignored the opinion of a

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

>   treating physician;
>
>   C.   The ALJ's credibility determination was contrary to the law and the evidence, and
>
>   D.   The ALJ failed to properly develop the record.

**I.   Standard of Review**

2.   This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied.   **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994).   Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "   **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).   In reviewing the Commissioner's decision, the court cannot weigh the evidence or substitute our discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole.   **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

3.   The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled.   **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988).   If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there.   **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989).   The burden of proof is on the claimant through step four; then it shifts to the Commissioner.   Id.

**II.   Vocational and Medical Facts**

4.   At the time of the administrative hearing, February 11, 1997, Plaintiff was six weeks shy of this 60th birthday.   (Tr.19, 58).   He has a 7th grade education, and is illiterate.   (Tr. 72, 75).   He worked for 36 years as a crusher operator, and one and one-half years as a heavy equipment operator.

2

(Tr. 76).

5.  Plaintiff broke his right femur in an auto accident in 1988, and was treated with the placement of an intermedullary rod. (Tr. 69, 102). On August 7, 1991, a portion of the fifth finger of his right hand was crushed when he grabbed a conveyor belt to prevent a fall when his right knee gave out. (Tr. 69, 100, 102). On August 14, 1991, Plaintiff advised George Swajian, D.O., that he had experienced problems with his right thigh and knee since the 1988 auto accident, with increasing leg and low back pain and giving out of the right knee since 1990. (Tr. 102). On physical examination, Dr. Swajian noted restricted lumbar range of motion, equal thigh circumference (19"), marked weakness of the quadriceps and hamstring muscles and chrondromalacia of the right patella with slight lateral tracking. X-rays demonstrated well maintained disc spaces and vertebral height, with the exception of an old compression fracture at T1, questionable-minimal spondylolisthesis, slight arthritic changes of the lower lumbar spine, and degenerative changes of the right patella. Dr. Swajian recommended an exercise program to stabilize and strengthen the right leg so that Plaintiff could walk without pain and without the knee giving out. (Tr. 102-105).

6.  Plaintiff was evaluated at New Mexico Physical Therapists on November 4, 1991. Objective testing on that day demonstrated marked deficiencies in his right quadriceps and hamstrings (right knee extensors and flexors). The evaluator stated that exercise could help eliminate the giving out of the right knee, and an exercise program was recommended. (Tr. 94-96).

7.  Plaintiff returned to Dr. Swajian on December 9, 1991, still complaining of weakness and giving our of his right knee with low back pain. He stated that his job prevented him from attending physical therapy. (Tr. 100-101).

8.  Plaintiff's third visit with Dr. Swajian occurred on July 6, 1992. At that time he complained

of low back pain radiating to his right thigh. Dr. Swajian noted limitation of motion in the lumbar and thoracic spine, as well as chondromalacia and weakness of the quadriceps mechanism. (Tr. 98-99).

9. In 1996 Plaintiff's right knee gave out while he was operating a piece of heavy equipment, preventing him from operating a foot brake. This caused him to collide with another vehicle. He felt he could no longer operate heavy equipment safely, and quit his job. (Tr. 81, 108).

10. Plaintiff had seen no medical professional after his July 6, 1992, visit with Dr. Swajian until February 22, 1996, when Donna Deming, M.D., a family practice physician, performed a consultative examination. (Tr. 106-118). At the time of the exam, Plaintiff complained of pain in the low lumbar and sacral area, worse on the right, pain in the right knee, increased pain with bending, walking and standing, variable limitation in sitting ability, headaches, and giving away of his right knee. He told Dr. Deming that he could lift but not carry 100 lbs. He stated that he treated all of his pain complaints with Anacin or Tylenol, taking three tablets twice a day, and that this medication relieved his pain. He listed his daily activities, which included preparing meals, washing dishes, laundry, shopping for food, driving a car, watching TV, visiting with friends, eating out, bathing and brushing his teeth and changing his clothes. Dr. Deming performed a physical examination which was notable for the absence of muscle wasting, full range of motion of all joints tested[2], and intact motor function except for the left hamstring muscles which were minimally weak when compared to the right.

11. Dr. Deming concluded that Plaintiff had chronic low back pain originating in the SI joint, residual knee pain, muscular or facial headaches relieved by Anacin, and ankle pain at night which did

---

[2] Dr. Deming attached a range of motion form to her report, indicating that she tested the shoulder, elbow, wrist, knee, hip, ankle, cervical and lumbar spine for range of motion. The form also noted that Plaintiff could squat, walk on his heels and walk on his toes. (Tr. 113-114).

not interfere with walking.  In a Statement of Ability To Do Work Related Activities, she stated that his ability to lift, carry, stand, walk and sit was limited, but did not indicate the extent of limitation, or the number of hours in an eight hour day he would be able to engage in any of those activities. (Tr. 110-112).

12.     Plaintiff's medical records were reviewed by agency physician on or about March 3, 1996 and again on April 4, 1996. (Tr. 34, 36).  Their evaluations and rationale are not contained in the administrative record.

13.      In his application for benefits, Plaintiff alleged a date of onset of disability of January 12, 1996,  due to giving out of his right knee, partial amputation of the 5th finger of his right hand, headaches, low back pain, arthritis in his back and leg and kidney stones.[3]  (Tr. 58, 68).

14.     Plaintiff returned to Dr. Swajian on January 2, 1997, complaining of pain in his low back radiating to his thoracic area, right thigh pain, left gluteal pain, and increased weakness of his right leg. Dr. Swajian documented marked atrophy of the right thigh, scapular instability, pelvic instability, limited range of cervical, thoracic and lumbar motion, progressive scoliosis, very marked chondromalacia of the right knee and marked muscle weakness of the quad hamstring mechanism. (Tr. 119-122).

**III.     Analysis**

15.     Turning first to the issue of credibility, the ALJ rejected Plaintiff's testimony, finding that he had not credibly established  symptoms (pain) or functional limitations to the extent alleged. (Tr. 16-17).  In terms of disabling pain complaints, substantial evidence supports the ALJ's conclusion.  As noted by the ALJ, Plaintiff takes only non-prescription medication, and was not under a doctor's care

---

[3]Plaintiff  has not had a kidney stone attack since 1980.  (Tr. 108).

from 1992 until 1997. In terms of functional ability, however, the rationale stated in the ALJ's decision is inadequate, and not supported by substantial evidence. Plaintiff's complaint regarding function is his inability to operate heavy equipment because his knee goes out on him. The ALJ made no finding that this complaint was invalid, nor did he cite to any evidence of record to indicate that Plaintiff did not experience this complaint. On the contrary, the medical evidence documented long standing problems with his right knee, anti-dating Plaintiff's application for benefits, as well as objective medical evidence establishing weakness in the hamstring and quadriceps muscles of the right leg.

16.  The ALJ denied the claim at step four of the sequential evaluation process on the basis that claimant retained the RFC to return to his past job has a heavy equipment operator. (Tr. 16-18). The ALJ cited to the Dictionary of Occupational Titles definition of Heavy Equipment operator in assessing the functional demands of that job.[4] (Tr. 18). The DOT defines Heavy Equipment Operator as a job in the medium exertional level. **Dictionary of Occupational Titles**, Vol. II, 4th Ed., 1991, p. 892.[5]

17.  For the ALJ's decision to deny benefits at step four to be valid, the agency requires that he

---

[4] Plaintiff testified that the job of heavy equipment operator, as he performed it, required very little lifting, no walking or standing, occasional bending, climbing onto machinery, constant sitting (eight hours in an eight hour day), constant jarring due to vibration of the equipment, and use of foot controls (brakes). (Tr. 24-25, 77, 106). The ALJ did not refer to this description of Plaintiff's job duties, relying solely on the Dictionary of Occupational Titles in addressing Plaintiff's claim at step four of the sequential evaluation process.

[5] The DOT further defines the duties of a heavy equipment operator as follows: "operates several types of power construction equipment, such as compressors, pumps, hoists, derricks, cranes, shovels, tractors, scrapers, or motor graders, to excavate, move and grade earth, erect structural and reinforcing steel, and pour concrete or other hard surface paving materials. Turns valves to control air and water output of compressors and pumps. Adjusts hand wheels and control attachments, such as blades, buckets, scrapers, and swing booms. Repairs and maintains equipment. May operate machinery on sales lot or customer's property to demonstrate saleable features of construction equipment and design. . ."

make specific findings concerning: (1) Plaintiff's RFC, (2) the functional demands of Plaintiff's job as a heavy equipment operator, and (3) Plaintiff's ability to return to that job with the RFC the ALJ determined him to have. **See Social Security Rulings 96-8p & 82-62; See also Winfrey v. Chater**, 92 F.3d 1017, 1023 (10th Cir. 1996) (summarizing the tree phases of the agency's step-court analysis). The ALJ is bound by the agency's ruling, see **20 C.F.R. § 402.35(b)(1)**, and his findings must be supported by substantial evidence, **see Goatcher v. United States Dep't of Health & Human Servs.,** 52 F.3d 288, 289 (10th Cir. 1995).

18.      The ALJ found that Plaintiff retained the RFC for medium work. Medium work requires the ability to lift fifty pounds at a time, with frequent lifting of objects weighing up to twenty-five pounds, frequent bending-stooping, and standing or walking off or on for approximately six hours a day. **Social Security Ruling 83-10** (West's Soc.Sec.Rptg.Serv.) at 30 (1992). To make this determination, the ALJ was required to assess Plaintiff's ability to perform the "physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." in determining his RFC. **20 C.F.R. §404.1545(b).** The ALJ did not make specific findings regarding Plaintiff's RFC. Instead, he listed Plaintiff's physical injuries, results of x-ray studies indicating arthritic changes in his back and knee, and referred to Plaintiff's having quit work because of his leg giving way. He then summarized portions of the medical evaluations performed by Drs. Deming and Swajian (Tr. 17):

| Dr. Deming | Dr. Swajian |
|---|---|
| --walks, minimally favoring right leg | --walks favoring left leg |
| --Full range of motion of all joints | cervicodorsal strain/sprain with rather marked limitation of motion |
| --No muscle wasting | |
| --Able to squat, and walk on heels and toes | |
| --DTRs 2+ and symmetrical | |
| --Motor function intact except for minimally weak left hamstring muscle (compared to right) | |
| --No tremor, ataxia, spasticity or abnormal posturing | |
| -- Fine and gross motor coordination within normal limits | |
| – No devices used or needed to assist with ambulation | |
| – Got on and off exam table without difficulty | |

The ALJ did not refer to Dr. Swajian's additional findings of marked atrophy of the right thigh (supported with measurements), or chondromalacia of the right knee, nor did he refer to Dr. Deming's Statement of Ability To Do Work-Related Activities, which documented but failed to quantify limitations in Plaintiff's ability to lift, carry, stand, walk and sit. The ALJ did refer to the opinion of a state agency non-examining physician as support for his conclusion that Plaintiff retained the capacity for medium work. (Tr. 17). As previously stated, however that opinion and its underlying rationale are not contained in the administrative record, and so cannot supply any support for the ALJ's decision. **Cf. Frey v. Bowen**, 816 F.2d 508, 515 (10th Cir.1987) (evaluation forms prepared by agency physician without examination, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").

19.   The ALJ failed to make the detailed findings required by the regulations and rulings at step

four. Although the ALJ provided a "narrative discussion describing how the evidence supports" his conclusion, he failed to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Id.   He also failed to explain and resolve the inconsistencies between the findings of Dr. Deming, and Plaintiff's treating physician,  Dr. Swajian.  **See Goatcher v. United States Dep't of Health & Human Servs.**, 52 F.3d 288, 290 (10th Cir.1995)(holding that ALJ should determine whether inconsistent medical reports outweigh treating physician's report, and should consider factors identified in regulations);  **20 C.F.R. 404.1527(d)(2)-(6)**(setting out factors to be considered).

**IV.    Recommendation**

20.     For these reasons, I recommend that the Plaintiff's Motion to Reverse and Remand be granted in part, and that this case be remanded to the Commissioner for additional proceedings to include consideration of whether and to what extent Plaintiff's functional impairment related to his right knee impacts his residual functional capacity for work as a heavy equipment operator.  The Commissioner shall address the findings of Plaintiff's treating physician, consider the specific factors listed in **20 C.F.R. §404.1527(d)**, and shall support his conclusion with reference to substantial evidence. Plaintiff shall be permitted to submit additional evidence relative to the factors listed in **20 C.F.R. §404.1527(d)**, and the Commissioner may obtain evidence from a medical consultant which specifically addresses the extent to which Plaintiff's impairments impact on his ability to perform work related activities on a daily basis.  In the event the Commissioner determines on reconsideration that Plaintiff can not return to his prior work as a heavy equipment operator, he is instructed to continue his analysis at step five of the sequential evaluation process.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**

For Plaintiff:     Gary J. Martone, Esq.
                   Francesca J. MacDowell, Esq.

For Defendant:     Raymond Hamilton, Esq.
                   Katauna J. King, Esq.